# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| ARCHWAY COOKIES, LLC *et al.*, | ) | |
| | ) | Case No. 08-12323 (CSS) |
| Debtors. | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| JEFFREY AUSTEN on behalf of himself and all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 08-51530 (CSS) |
| | ) | |
| ARCHWAY COOKIES, LLC and MOTHER'S CAKE & COOKIE CO., | ) | |
| | ) | |
| Defendants. | ) | **RE:  D.I. 1065, 1072** |
| | ) | **A.D.I. 57; 61** |

**ORDER APPROVING SETTLEMENT BETWEEN THE CHAPTER 7 TRUSTEE
FOR ARCHWAY COOKIES, LLC AND MOTHER'S CAKE & COOKIES CO.
AND THE NAMED PLAINTIFF AND CLASS REPRESENTATIVE**

Upon the joint motion (the "Joint Motion") of Jeoffrey L. Burtch, the Chapter 7 Trustee

for Defendants Archway Cookies, LLC, and Mother's Cake & Cookie Co. (the "Trustee") and

with Jeffrey Austen (the "Class Representative" or "Named Plaintiff"), on behalf of himself and

similarly situated class members ("Class Members") for entry of an order approving the

proposed WARN Settlement Agreement and proposed Archway-Catterton-Insight Agreement;[1]

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the WARN Settlement Agreement or the *Motion of Chapter 7 Trustee of Archway Cookies, LLC and Mother's Cake & Cookie Co. Joined by the Named Plaintiff and Class Representative, Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rules 9019 and 7023 to: (1) Preliminarily Approve the Archway-Catterton-Insight Settlement Agreement Pursuant to Bankruptcy Rule 9019, (2) Preliminarily Approve the WARN Settlement Agreement Pursuant to Rule 7023; (3) Approve the Form and Manner of Notice to Class Members of the WARN Settlement; (4) Schedule a Fairness Hearing to Consider Final Approval of the WARN Settlement Agreement and the Archway-Catterton-Insight Settlement Agreement; (5) Finally Approve the WARN Settlement Agreement and Archway-Catterton-Insight Settlement Agreement Pursuant to Bankruptcy Rules 9019 and 7023 After the Fairness Hearing; and (6) Grant Related Relief* (the "Joint Motion"), as appropriate.

**THE COURT HEREBY FINDS THAT:**

A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2);

B.    Due notice has been given to the Class of the proposed WARN Settlement Agreement, the right to object to the proposed WARN Settlement Agreement and the right to appear in person or by counsel at the fairness hearing; and no other and further notice is required and such notice is deemed proper and sufficient under the circumstances;

C.    The Court entered an Order on February 21, 2012 granting preliminary approval of the Archway-Catterton-Insight Agreement, granting preliminary approval of the WARN Settlement Agreement and approving the form and manner of notice of the WARN Settlement Agreement and the deadline for objections to be given to all Class Members;

D.    All Class Members who did not exercise the right to opt-out of the Class are bound by this Order and by the terms of the WARN Settlement Agreement;

E.    The terms of the WARN Settlement Agreement are fair, reasonable and adequate under Federal Rule of Civil Procedure 23 incorporated by Rule 7023 of the Federal Rules of Bankruptcy Procedure and the nine factor test the Third Circuit developed in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975);

F.    The WARN Settlement Agreement was negotiated at arms length and in good faith, is fair, equitable and in the best interests of the creditors and the estates;

G.    Other good and sufficient cause exists for granting the relief requested in the Joint Motion.

**IT IS HEREBY ORDERED THAT:**

1.      The WARN Settlement Agreement, attached hereto as **Exhibit 1**, is APPROVED as fair and reasonable.  The parties are authorized to implement its terms.

2.      The Archway-Catterton-Insight Agreement, attached hereto as **Exhibit 2**, is APPROVED as fair and reasonable.  The parties are authorized to implement its terms.

3.      Effective upon payment of funds from the Settlement Fund (as defined in the WARN Settlement Agreement), any and all claims that have been scheduled on behalf of, or filed by, the Class Representative or the Class Members who have not opted out of the WARN Adversary Proceeding in this Chapter 7 case, for any claim based on the termination of their employment and alleged failure to provide adequate notice under the WARN Act, under any federal, state or local law, regulation or ordinance, including, without limitation, individual WARN Claims seeking back pay or benefits, are disallowed and expunged in their entirety.

4.      Upon payment of the funds from the Settlement Fund, this Order shall operate as a full and final release and discharge, by all members of the Class (except for any persons who have opted out of the WARN Adversary Proceeding) (collectively, "Releasors"), of the Trustee, Estates, Debtors and their attorneys and past, present and future divisions, affiliates, predecessors, successors, shareholders, members, officers, directors, employees, agents, trustees, representatives, administrators, fiduciaries, assigns, subrogees, executors, partners, limited partners, parents, subsidiaries, and privies ("Delaware Releasees"), and including Catterton Partners V, L.P., Catterton Partners V Offshore, L.P., Catterton Coinvest I, L.L.C., Catterton managing partner V, L.L.C., Catterton Management Company, L.L.C., Insight Holdings LLC, Focus Management Group USA, Inc., Wells Fargo Company, Alvarez & Marsal North America,

LLC, and their attorneys and past, present and future divisions, affiliates, predecessors, successors, shareholders, members, officers, directors, employees, agents, trustees, representatives, administrators, fiduciaries, assigns, subrogees, executors, partners, limited partners, parents, subsidiaries, and privies ("Connecticut Releasees")(the Delaware and Connecticut Releasees are hereinafter collectively referred to as, the "Releasees"), of and from any and all claims, demands, debts, liabilities, obligations, liens, actions and causes of action, costs, expenses, attorneys' fees and damages of whatever kind of nature, at law, in equity or otherwise, whether known or unknown, anticipated, suspected or disclosed, which the Releasors may now have or hereafter may have against the Releasees; provided, however, that solely with respect to the Delaware Releasees, the released claims are limited to or related to or are based on the WARN Act or back pay or equivalent compensation under any federal, state or local law or regulation arising out the termination of the Named Plaintiff or Class Members' employment, which would be chargeable as damages under the WARN Act, including but not limited to: (i) all claims asserted or that could have been asserted in the WARN Adversary Proceeding; (ii) the Individual WARN Claims; and (iii) any other claims for back or severance pay or benefits based on or arising out of any federal, state or local statute, ordinance or regulation; provided, however, that the following claims and/or rights with respect to the Delaware Releasees shall not be released: (a) any prepetition claims arising out of the obligations of the Debtors unrelated to the WARN Act; (b) rights, if any, unrelated to Class Members' WARN claims, to payment of benefits that a Class Member may have under a qualified or nonqualified retirement plan sponsored or maintained by any of the Debtors (including, without limitation, any 401(k)), deferred compensation, and supplemental retirement benefits), (c) a Class Member's rights to benefits or coverage under and employee welfare benefit plan (as that term is defined in section 3(1) of the Employee Retirement Income Security Act of 1974, as amended); and (d) any claims

4

for non-WARN-related vacation pay, paid time off, unpaid wages, or reimbursable expenses. All rights of the Releasees to object to, offset or oppose any and all claims, obligations, or causes of action, of any type, except those claims expressly allowed under the WARN Settlement Agreement, are expressly reserved.

5.     The payment of attorneys' fees and costs to Class Counsel are set forth in the WARN Settlement Agreement and shall be made pursuant to the terms of the WARN Settlement Agreement and this Order.

6.     Effective upon payment of the Initial Settlement Payment (as defined in the WARN Settlement Agreement), the Adversary Proceeding styled *Austen v. Archway Cookies, LLC and Mother's Cake & Cookie Co.*, which is presently pending in the Bankruptcy Court as Adversary Proceeding No. 08-51530 (CSS), is deemed dismissed with prejudice.

7.     Nothing in this Order, the WARN Settlement Agreement or any of the pleadings and papers filed in support of the approval of the WARN Settlement Agreement shall constitute a waiver of any right of the Released Parties to assert any claims not encompassed by the WARN Settlement Agreement and/or any claims which the law clearly states may not be released by settlement.

8.     This Court shall retain jurisdiction, even after the closing of this Chapter 7 case, with respect to all matters arising from or related to the implementation of this Order.

Dated: April 17, 2012

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

5

# EXHIBIT "1"

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | )     Chapter 7 |
| ARCHWAY COOKIES, LLC *et al.*, | ) |
| | )     Case No. 08-12323 (CSS) |
| Debtors. | ) |
| | )     (Jointly Administered) |
| _____ | ) |
| JEFFREY AUSTEN on behalf of himself and all others similarly situated, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Adv. Proc. No. 08-51530 (CSS) |
| | ) |
| ARCHWAY COOKIES, LLC and MOTHER'S CAKE & COOKIE CO. | ) |
| | ) |
| Defendants. | ) |

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (this "Settlement Agreement") is entered between and among Jeffrey Austen, as named plaintiff and class representative in the Delaware Action (as defined herein) and named plaintiff and putative class representative in the Connecticut Action (as defined herein), and David A. Icardi, as named plaintiff and putative class representative in the Connecticut Action (as defined herein) (collectively, the "Named Plaintiffs"), and all members of the class as described herein (the "Plaintiff Class"), and Jeoffrey L. Burtch, as Chapter 7 trustee for the bankruptcy estates of Archway Cookies, LLC, and Mother's Cake & Cookie Co., (the "Trustee" for the "Estates" of the "Debtors"). These parties are collectively referred to herein as the "Settling Parties."

This Settlement Agreement shall become effective upon the Settlement Effective Date as set forth in Section I.B of this Settlement Agreement. The Settling Parties do hereby agree to do all things and procedures necessary and appropriate to obtain final approval of this Settlement Agreement in consideration for: (a) payment by the Estates of the consideration expressed herein subject to the terms, conditions, and limitations of this Settlement Agreement; (b) the release and dismissal with prejudice of all claims by the Named Plaintiffs and the Plaintiff Class that arise out of the factual allegations (or similar allegations asserted in the class action styled *Austen v. Archway Cookies, LLC*, Case No. 08-12323(CSS), Adv. Proc. No. 08-51530(CSS) in the United States Bankruptcy Court for the District of Delaware (the "Delaware Action" in the "Delaware Court"), and the putative class action styled *Austen v. Catterton Partners V, LP*, Case No. 3:09-cv-1257(MRK) in the United States District Court for the District of Connecticut (the "Connecticut Action" in the "Connecticut Court"), which releases are described more fully in Section VII.A; and (c) other valuable consideration set forth herein.

This Settlement Agreement resolves all claims related to the federal Worker Adjustment Retraining and Notification Act, 29 U.S.C. § 2101, *et seq.* ("WARN") and California Relocations, Terminations and Mass Layoffs law, Cal. Lab. Code § 1400, *et seq.* ("Cal WARN") and any other similar state laws that may be applicable (collectively, the "WARN Acts") that were or could have been asserted by the Plaintiff Class.

1

## I.    SETTLEMENT CLASS

### A.    <u>Settlement Class Definition</u>

For purposes of this settlement, the Settling Parties agree that the Plaintiff Class is the certified class in the Delaware Action, defined by order of the Delaware Court as follows:

> Plaintiff and the other former employees of Debtors (i) who worked at or reported to certain of Debtors' Facilities and were terminated without cause on or about October 3, 2008, within 30 days of October 3, 2008, or in anticipation of, or as the foreseeable consequence of, the mass layoff or plant closings on or about October 3, 2008, who were not given sixty days advance written notice of their terminations, who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5), and (ii) who have not filed a timely request to opt-out of the class.

*See* Order Certifying a Class and Granting Related Relief, *Austen v. Archway Cookies, LLC*, No. 08-12323(CSS), Adv. Proc. No. 08-51530(CSS) (Bankr. Del. May 10, 2010) (ECF No. 43).

### B.    <u>Settlement Approval Procedure</u>

This Settlement Agreement will become final and effective upon occurrence of all of the following events:

1.    Execution of this Settlement Agreement by the Settling Parties and their respective counsel of record.

2.    Entry by the Delaware Court of an order granting preliminary approval of this Settlement Agreement ("<u>Preliminary Approval</u>").

3.    Entry by the Delaware Court of an order approving the Notice of Proposed Class Action Settlement and Hearing ("<u>Settlement Notice</u>"), attached hereto as Exhibit "<u>A</u>", to be disseminated by Class Counsel notifying members of the Plaintiff Class of the material terms and provisions of this Settlement Agreement, the procedure for approval thereof, and their rights with respect thereto.

4.    The Class Counsel's verification, in writing, that the Settlement Notice to the Plaintiff Class has been disseminated in accordance with the Preliminary Approval, shall be

submitted on or before the date of the final approval hearing. The Settlement Notice will be mailed by first-class mail within ten (10) days after Preliminary Approval of the settlement.

5.      Entry of an Order by the Delaware Court, substantially in the form attached hereto as Exhibit "B," approving the settlement, releasing the claims of all members of the Plaintiff Class as set forth in Section VII herein, and dismissing the Delaware Action with prejudice ("Delaware Court's Order").

6.      Entry of an Order by the Connecticut Court dismissing the Connecticut Action with prejudice ("Connecticut Court's Order").

7.      Entry of an Order approving the Settlement Agreement and Release of Claims by, between and among the Trustee, Catterton (as defined in the agreement), and Insight (as defined in the agreement) executed contemporaneously herewith.

8.      Occurrence of the "Settlement Effective Date," which is defined as the date upon which both the Delaware Court's Order in the Delaware Action and the Connecticut Court's Order in the Connecticut Action have become final, shall be deemed to be the last to occur of the following: (a) if an appeal or review is not sought from the Delaware Court's Order, the fifteenth (15th) day after entry of the Delaware Court's Order; or (b) if an appeal or review is sought from the Delaware Court's Order, the day after the Delaware Court's Order is affirmed, or the appeal or review is dismissed or denied, and the appellate court's mandate has issued, and the Delaware Court's Order is no longer subject to further judicial review; or (c) if an appeal or review is not sought from the Connecticut Court's Order, the thirty-first (31st) day after service of notice of entry of the Connecticut Court's Order; or (d) if an appeal or review is sought from the Connecticut Court's Order, the day after the Connecticut Court's Order is affirmed, or the appeal or review is dismissed or denied, and the appellate court's mandate has issued, and the Connecticut Court's Order is no longer subject to further judicial review. The Settling Parties recognize that the Settlement Effective Date could be adjusted for any member of the Plaintiff Class for whom the law requires that the time to appeal the Delaware Court's Order should be tolled, such as those serving in active military duty who are covered by the Servicemembers

3

Civil Relief Act, 50 U.S.C. app. §§ 501 *et seq.*

## II.    EFFECT OF NON-APPROVAL

In the event that any of the conditions specified in Section I.B of this Settlement Agreement are not satisfied, all matters covered by this Settlement Agreement and the releases contained herein shall be null and void.  In such event, nothing in this Settlement Agreement shall be used or construed by or against any party as a determination, admission, or concession of any issue of law or fact in the litigation; and the Settling Parties do not waive, and instead expressly reserve, their respective rights with respect to the prosecution and defense of the litigation as if this Settlement Agreement never existed.

## III.    EFFECT OF ADDITIONAL OPT-OUT OPPORTUNITY

In the event that the Delaware Court orders an additional opportunity for current members of the Plaintiff Class to opt out of the Plaintiff Class, and fifteen (15) or more members of the Plaintiff Class so opt out (including any individuals who opted out of the Plaintiff Class during an earlier phase in the Delaware Action), the Trustee shall have the right to elect to terminate this Settlement Agreement prior to the entry of the Delaware Court's Order.  In the event this Settlement Agreement is terminated by the Trustee, this Settlement Agreement and the release contained herein shall be null and void.  Further, if this Settlement Agreement is terminated, nothing in this Settlement Agreement shall be used or construed by or against any party as an admission or concession of any issue of law or fact in the litigation and the Settling Parties do not waive, and instead expressly reserve, their respective rights with respect to the prosecution and defense of the litigation as if this Settlement Agreement never existed.

## IV.    SETTLEMENT FUND

### A.    <u>Composition of the Settlement Fund</u>

The Estates shall pay up to four million dollars ($4,000,000) in complete resolution of the Delaware Action and the Connecticut Action (the "<u>Settlement Fund</u>") as follows:  (i) three million dollars ($3,000,000) shall be paid to a third party administrator (the "<u>Settlement</u>

Administrator") on behalf of the Plaintiff Class within ten (10) business days after the Settlement Effective Date (the "Initial Settlement Payment"), and (ii) one million dollars ($1,000,000) shall be allowed as an unsecured, priority claim by the Estates in favor of the Plaintiff Class on the Settlement Effective Date, which claim shall be paid as set forth herein below within thirty (30) days after the entry of an order by the Delaware Court in Debtors' jointly administered chapter 7 bankruptcy cases (the "Delaware Bankruptcy Case"), styled *In re Archway Cookies, LLC*, No. 08-12323-CSS, approving the Trustee's final report (the "Final Settlement Payment").

Both the Initial Settlement Payment and the Final Settlement Payments will be made directly to an account established by the Settlement Administrator (identified below). Once the Settlement Administrator receives the Initial Settlement Payment, the following payments will be made by the Settlement Administrator from the Settlement Fund: (1) A one-time service payment in the amount of Ten Thousand ($10,000) Dollars to each of the Named Plaintiffs as compensation for their service to the Class ("Service Payments"); (2) attorneys' fees to the law firm of Outten & Golden LLP ("Class Counsel"), in the amount to be determined in accordance with Section V herein; (3) costs incurred by the plaintiffs in the Delaware Action and the Connecticut Action in an amount up to Seventy Thousand ($70,000) Dollars ("Class Costs"); (4) all Payroll Taxes (defined below); (5) and the balance to settlement amounts for the claims of the Plaintiff Class that are determined in accordance with Section VII of this Settlement Agreement. Payment of items (1), (2) and (3) shall be made within thirty (30) days after receipt by the Settlement Administrator of the Initial Settlement Payment. Payment of item (4) will be the responsibility of the Settlement Administrator and shall be paid as and when such taxes are due. Item (5) shall be paid within sixty (60) days of receipt by the Settlement Administrator of the Initial Settlement Payment according to the formula and provisions provided in Section VII. Within sixty (60) days of receipt of the Final Settlement Payment, the Settlement Administrator shall distribute the balance of the Settlement Fund first to pay all Payroll Taxes (defined below), the Class Counsel's fee award attributed to the Final Settlement Payment and then to the members of the Plaintiff Class, according to the formula and provisions provided in Section VII

5

for the claims of the Plaintiff Class that are established in accordance with Section VII of this Settlement Agreement.

Notwithstanding anything to the contrary herein, the Final Settlement Payment is contingent upon the Estates having sufficient funds to satisfy all allowed claims of equal priority under Section 507(a) of the Bankruptcy Code to the WARN Acts claims held by the members of the Plaintiff Class. In the event that there are insufficient funds to pay in full all allowed claims of equal priority to the claims held by the members of the Plaintiff Class, then the Final Settlement Payment shall be reduced to the same percentage applied to other creditors of the Estates holding allowed claims of equal priority. In this event, the pro rata payment to the Plaintiff Class shall take into account $500,000 of the Initial Settlement Payment. For example, if there are allowed claims of equal priority ("Similarly Situated Claims") totaling $1,500,000 and at the time that the Estates are in a position to make their final distribution and the Final Settlement Payment the Estates hold $1,500,000 in cash, then the Estates will distribute the $1,500,000 cash in the following manner. In this example, the percentage applied to equalize the distribution to the Similarly Situated Claims and WARN Claims shall be the amount held in cash by the Estates ($1,500,000) plus the Initial Settlement Payment ($500,000), divided by the sum of the combined claims before the Initial Settlement Payment (*i.e.*, Similarly Situated Claims of $1,500,000 plus WARN Claims of $1,500,000), in this case, a reduction of 66.6% of the claim. The distribution towards the Similarly Situated Claims shall be $1,000,000 (66% multiplied by $1,500,000). The distribution towards the WARN Claims shall be $500,000 (66% multiplied by $1,500,000 less the Initial Settlement Payment). This pro rata payment to the Plaintiff Class will be in final satisfaction and release of the Estates', Debtors' and/or the Trustee's obligations under this Settlement Agreement.

**B.     Allocation of the Settlement Fund**

The "Net Settlement Fund" shall be the total of the Initial Settlement Payment and Final Settlement Payment, less the Service Payments, Class Counsel's attorneys' fees awarded by the

Delaware Court upon application by Class Counsel, payments for Class Costs, and payments for the Employers' Taxes (defined below). The Net Settlement Fund shall be distributed, subject to required withholdings for Employee Taxes (defined below), through the process set forth in Section VII of this Settlement Agreement. For the purpose of calculating applicable taxes, the Settling Parties agree that one hundred percent (100%) of the amounts to be paid to the Plaintiff Class members, after deducting attorneys' fees, Service Payments, Class Costs, and the amount of the employers' share of FICA, but before deducting employee taxes, shall constitute wages reportable on IRS Form W-2 (the "Net Settlement Payment").

C.    **Offset Right**

Fifty percent (50%) of the gross amount allocated to each member of the Plaintiff Class from the Initial Settlement Payment and the Final Settlement Payment will be deducted from and shall automatically reduce the priority portion of each Plaintiff Class member's individual non-WARN Acts claim, if any, provided, however, that the Trustee reserves any and all rights to object to each member's individual claim, if any, on any and all grounds. For example, if a member of the Plaintiff Class has an asserted individual non-WARN Acts priority claim in the amount of $15,000, and the total amount allocated to the member for the WARN Acts claim from the Initial Settlement Payment and the Final Settlement Payment totals $6,000, then the claimant would apply $3,000 (50% of the total $6,000 allocated to this member from the Initial Settlement Payment and the Final Settlement Payment) against the claimant's $10,950 priority cap; and this claimant would be left with $7,950 under his/her priority cap to which he/she would be entitled to be paid as a priority claim in any final distribution from the Estate. For the avoidance of doubt, as shown by the above example if the member's individual non-WARN Acts claim, plus 50% of the gross amount allocated to the member from the two distributions (as set forth above) exceeds $10,950, then the excess amount above $10,950 shall be treated as a non-WARN Acts, general unsecured claim. The Trustee, the Estates and/or the Debtors specifically reserve their rights to assert any and all defenses, other offsets, and any other rights or claims, to

7

and/or in respect of any individual non-WARN Acts claim filed by a member of the Plaintiff Class.

## V.    ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Plaintiff Class and the Named Plaintiffs have asserted statutory claims for attorneys' fees and costs under the WARN Acts pursuant to Cal. Labor Code § 1404 and 29 U.S.C. § 2104(a)(6). These claims, and any other claim for attorneys' fees and costs, have been compromised and resolved as follows:

The Plaintiff Class will request approval from the Delaware Court of Class Costs of not more than Seventy Thousand ($70,000) Dollars, and attorneys' fees of thirty-three and one-third percent (33 ⅓%) of the Settlement Fund after reduction for payment of the Class Costs and Service Payments. No attorneys' fees will be deducted from the Service Payments. The attorneys' fee award, Class Costs and Service Payments award shall be paid from the Settlement Fund. The attorneys' fees will be paid in the two distributions as thirty-three and one-third percent (33 ⅓%) of the Initial Settlement Payment and thirty-three and one-third percent (33 ⅓%) of the Final Settlement Payment. Class Counsel will not seek payment of fees or reimbursement of costs other than as set forth herein and the Trustee will not object to Class Counsel's request for fees and Class Costs nor Service Payments that are consistent with this provision.

This Settlement Agreement is not contingent upon the allowance, disallowance, or modification by the Delaware Court of the application by Class Counsel for an award of attorneys' fees and/or costs, except that the Trustee shall have the right to terminate this Settlement Agreement if the award of fees is in excess of the thirty-three and one-third percent (33 ⅓ %) agreed amount. Any order or proceedings relating to the application by Class Counsel for an award of attorneys' fees and/or costs, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Settlement Agreement, or affect or delay the finality of the Delaware Court's Order approving the Settlement Agreement and the settlement of this Action, as set forth herein.

## VI.   RELEASE OF CLAIMS

### A.   <u>Release by the Plaintiff Class and the Named Plaintiffs</u>

In exchange for the payment of the Initial Settlement Payment and the Final Settlement Payment by the Trustee to the Settlement Administrator, the Named Plaintiffs and all members of the Plaintiff Class (excluding any who may have opted out) (collectively, the "<u>Releasors</u>"), on behalf of themselves and on behalf of all who claim by or through them or in their stead, do hereby and forever release, acquit, and discharge the Trustee, Estates, Debtors, and their attorneys and past, present and future divisions, affiliates, predecessors, successors, shareholders, members, officers, directors, employees, agents, trustees, representatives, administrators, fiduciaries, assigns, subrogees, executors, partners, limited partners, parents, subsidiaries, and privies (the "<u>Delaware Releasees</u>"), and   Catterton Partners V, L.P., Catterton Partners V Offshore, L.P., Catterton Coinvest I, L.L.C., Catterton Managing Partner V, L.L.C., Catterton Management Company, L.L.C., Insight Holdings LLC, Focus Management Group USA, Inc., Wells Fargo Company, Alvarez & Marsal North America, LLC, and their attorneys and past, present and future divisions, affiliates, predecessors, successors, shareholders, members, officers, directors, employees, agents, trustees, representatives, administrators, fiduciaries, assigns, subrogees, executors, partners, limited partners, parents, subsidiaries, and privies (the "<u>Connecticut Releasees</u>"), of and from any and all claims, demands, debts, liabilities, obligations, liens, actions and causes of action, costs, expenses, attorneys' fees and damages of whatever kind of nature, at law, in equity and otherwise, whether known or unknown, anticipated, suspected or disclosed, which the Releasors may have as of the date of this Settlement Agreement arising out of the factual allegations raised in the Delaware and Connecticut Actions or similar factual allegations against the Delaware Releasees or the Connecticut Releasees; <u>provided</u>, <u>however</u>, that solely with respect to the Delaware Releasees, the released claims are limited to and related to or are based on the WARN Acts or back pay or equivalent compensation under any federal, state or local law or regulation arising out of the

termination of the Named Plaintiffs' or Plaintiff Class members' employment, which would be chargeable as damages under the WARN Acts or any other similar state or local law regulation, including, but not limited to: (i) all claims asserted or that could have been asserted in the Delaware Action; (ii) the Individual WARN Claims (as defined in Section VI.B herein); and (iii) any other claims for back or severance pay or benefits based on or arising out of any federal, state or local statute, ordinance or regulation; provided, however, that the following claims and/or rights with respect to the Delaware Releasees shall not be released: (a) any prepetition claims arising out of the obligations of the Debtors unrelated to the WARN Acts; (b) rights, if any, unrelated to Plaintiff Class members' WARN Acts claims, to payment of benefits that a Plaintiff Class member may have under a qualified or nonqualified retirement plan sponsored or maintained by any of the Debtors (including, without limitation, any 401(k), deferred compensation, and supplemental retirement benefits), (c) a Plaintiff Class member's rights to benefits or coverage under any employee welfare benefit plan (as that term is defined in Section 3(1) of the Employee Retirement Income Security Act of 1974, as amended); and (d) any claims for non-WARN-related vacation pay, paid time off, unpaid wages, or reimbursable expenses. The claims released hereunder are referred to herein as the "Claims." The Delaware Releasees and Connecticut Releasees expressly reserve the right to object to, offset or oppose any and all claims, obligations, or causes of action, of any type, except those claims expressly allowed hereunder.

Named Plaintiffs and all members of the Plaintiff Class expressly covenant not to sue or otherwise participate in any action against the Delaware Releasees and Connecticut Releasees based on any of the Claims. Named Plaintiffs and all members of the Plaintiff Class fully understand that they are compromising and releasing, among other matters, disputed claims for the payment of wages, and they expressly assume the risk that facts relating to this release and dismissal may later be found to be other than or different from the facts now believed to be true, and they expressly accept and acknowledge that in such an event this Settlement Agreement and the release of claims which the Named Plaintiffs and Plaintiff Class have ever had against the

Delaware Releasees and Connecticut Releasees, or any of them, prior to the Settlement Effective Date, will remain valid.

The Settling Parties intend this Settlement Agreement, and the releases and covenants not to sue contained herein, to inure to the benefit of the Delaware Releasees and Connecticut Releasees.

The Releasors and Class Counsel acknowledge that they are familiar with, and/or, in the case of Plaintiff Class members, have been informed of the provisions of California Civil Code Section 1542, which provides that:

> **"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."**

The Releasors expressly waive and relinquish to the fullest extent that the law permits, the provisions, rights, and benefits of California Civil Code Section 1542 and other statutes, regulations or common law principles of similar effect.

Any obligation created by or arising out of this Settlement Agreement is not included in the Claims. Notwithstanding anything to the contrary herein, the Trustee's and the Estates' obligations to the Plaintiff Class hereunder are expressly limited to the payment of the Initial Settlement Payment and the Final Settlement Payment to the Settlement Administrator (as defined herein below) or the Qualified Settlement Fund (as defined herein below) pursuant to the terms of this Settlement Agreement, and once such payments are made to the Settlement Administrator or Qualified Settlement Fund, the Trustee's and the Estates' obligations hereunder to the Plaintiff Class shall be deemed satisfied in full.

**B.    Individual WARN Claims**

Some persons within the Plaintiff Class and/or the Named Plaintiffs filed individual proofs of claim in the Delaware Bankruptcy Case based on the termination of their employment. To the extent these individual claims are based on the backpay or benefits compensable under

the WARN Acts arising out of the termination of the Plaintiff Class member's employment, including, but not limited to: (i) claims asserted or that could have been asserted in the Delaware Action and/or the Connecticut Action, they are referred to herein as the "Individual WARN Claims." The Trustee, the Estates and the Debtors dispute all Individual WARN Claims.

Upon the payment of the funds from the Settlement Fund, the Plaintiff Class and the Named Plaintiffs agree that any Individual WARN Claims that have been filed by or on behalf of, any member of the Plaintiff Class (excluding those who may opt out) and/or the Named Plaintiffs, are hereby disallowed in their entirety and expunged from the claims registers maintained for the Delaware Bankruptcy Case.

### C.    Agreements of Counsel

Counsel for the Named Plaintiffs and Plaintiff Class agrees that it will not, directly or indirectly, commence any litigation or assert any claims on behalf of any former employees of Debtors who previously opted out of the Delaware Action or who may opt out of the Settlement Agreement against the Delaware Releasees and Connecticut Releasees for the Claims defined herein. The Settling Parties agree that they are compromising and settling disputed claims. Other than as set forth herein, each of the Settling Parties shall bear its own attorneys' fees, expenses and court costs. Each of the Settling Parties further agrees that, except as provided herein, it shall not commence or continue any contested matter, adversary proceeding, lawsuit or arbitration which contests, disputes or is inconsistent with any provision of this Settlement Agreement.

## VII.    NOTICE AND CLAIMS PROCESS

### A.    Settlement Administrator

Class Counsel and the Trustee shall jointly retain a third party to assist them in the administration of the settlement, to provide notice to the Plaintiff Class and to administer the claims process (the "Settlement Administrator"), as set forth below. The Settlement Administrator will be Settlement Services, Inc. or such other third party acceptable to Class

Counsel and the Trustee. The Trustee, Estates and/or Debtors shall bear the fees, costs and/or expenses incurred by the Settlement Administrator up to a cap of $29,000.

The Trustee may cause the establishment of a Qualified Settlement Fund under 26 U.S.C. § 468B ("QSF") by the Settlement Administrator to further effectuate the Settlement Agreement and the distributions to each of the Plaintiff Class members to be made hereunder. If the Trustee elects to establish a QSF to make payments from the Settlement Fund (as defined in Section IV herein), the established and appropriate QSF procedures for making such payments shall be utilized. Any employee payroll tax withholdings required by federal, state or local law ("Employee Taxes") shall be withheld from the Initial Settlement Payment as well as the Final Settlement Payment (if any) distributed to each Plaintiff Class member and the Plaintiff Class member shall be issued a Form W-2 reflecting such withholdings. The employer portion of all applicable federal, state and local taxes, including without limitation, Federal Insurance Contribution Act ("FICA") taxes, as well as any other taxes and unemployment compensation contributions, of the distributions to Plaintiff Class members receiving payments under this Settlement Agreement, shall also be withheld (the "Employers' Taxes" and jointly with the "Employee Taxes", the "Payroll Taxes"). The Settlement Administrator, on behalf of the Estates and/or Debtors as appropriate, and upon consultation with the Trustee as appropriate, shall determine the amount of any Payroll Taxes that will become due and owing and shall be withheld. All such Payroll Taxes shall be paid promptly from the Settlement Fund to the appropriate taxing authorities. The Settlement Administrator shall be responsible for the reporting of same, as well as the provision of Forms W-2 and other required tax reporting forms (including any Form 1099 issued under Subsection B below).

The Settlement Administrator shall act as the agent of the Trustee, Estates and/or Debtors if a QSF is not established or shall act as the trustee of the QSF, if such is established, with respect to determining required withholdings, fulfilling reporting requirements, including federal and state payroll tax returns, the issuance of Forms W-2 and other required federal and state tax forms, and related matters. As specified in Section IV, for the purpose of calculating applicable

13

taxes, the Settling Parties agree that one hundred percent (100%) of the amounts to be paid to the Plaintiff Class members, after deducting attorneys' fees, Class Costs, Service Payments, and the amount of the Employers' Taxes, but before deducting Employee Taxes, shall constitute wages reportable on IRS Form W-2.

**B.**     **Class Member Payments**

Within thirty (30) days following receipt of the Initial Settlement Payment, the Settlement Administrator shall pay Class Counsel's attorneys' fees and costs awarded by the Delaware Court upon application by Class Counsel, payment of Class Costs, and Service Payments awarded by the Court. Within sixty (60) days following receipt of the Initial Settlement Payment, the Settlement Administrator shall use the existing balance of the Net Settlement Fund (the "Initial Settlement Payment Balance") to make a pro rata payment to each Plaintiff Class member ("Initial Individual Settlement Amount") using the formula set forth below. Within sixty (60) days of receipt of the Final Settlement Payment, the Settlement Administrator shall use the remaining balance of the Net Settlement Fund (the "Final Settlement Payment Balance"), to pay all Payroll Taxes and Class Counsel's fee award and costs attributable to the Final Settlement Payment and make a final payment to each Plaintiff Class member, as set forth below.

The Initial Individual Settlement Amount of each member of the Plaintiff Class shall be determined by first multiplying the hourly rate of the Plaintiff Class member (as determined from the records of the Defendants in the Delaware Action) by 8 (to come up with the daily rate), and then multiplying the product by sixty (60) working days (but the sixty (60) working days will first be reduced by any week days worked after October 3, 2008 within the alleged violation period) to come up with the "Backpay Amount."

The Backpay Amount for each Plaintiff Class member shall then be multiplied by a risk factor based on the worksite at which he or she worked. If the Plaintiff Class member was formerly employed in Ashland, OH or Battle Creek, MI, the Backpay Amount shall be

multiplied by 70% and the product shall be the "Adjusted Backpay Amount." For those who worked at all other sites, the Backpay Amount shall be multiplied by 30% to produce their Adjusted Backpay Amount. These risk factor percentages reflect the relative strengths of employees' claims under the WARN Acts.

A Plaintiff Class member's Initial Individual Payment Amount shall be calculated by dividing the Plaintiff Class member's Adjusted Backpay Amount by the sum of all Plaintiff Class members' Adjusted Backpay Amounts, and multiplying the quotient (the "Individual Settlement Share") by the Initial Settlement Payment Balance (i.e., the Net Settlement Fund reduced by payment of Class Counsel's attorneys' fees awarded by the Delaware Court upon application by Class Counsel, Class Costs, the Service Payments and payments for the Employers' Taxes).

The Initial Individual Payment Amount shall be reduced by payment of all Payroll Taxes for the individual including the Employers' Taxes, and be paid by the Settlement Administrator from the Initial Settlement Payment Balance. Within sixty (60) days of the receipt of the Final Settlement Payment, the Settlement Administrator shall use the remaining balance of the Net Settlement Fund (the "Final Settlement Payment Balance") to make a final payment to each Plaintiff Class member equal to the Final Settlement Payment Balance reduced by attorneys' fees according to the percentage ordered by the Court and costs, multiplied by the Plaintiff Class member's Individual Settlement Share, resulting in a Final Individual Payment. The Final Individual Payment shall be paid to each member of the Class net of all Payroll Taxes, including the Employers' Taxes which shall be paid from the Final Settlement Payment Balance.

The Service Payments shall be characterized as non-employee compensation to the Class Representatives and shall be reported to the Taxing Authorities on behalf of each Class Representative on a IRS Form 1099 issued to the Class. The amount of Class Counsel's attorneys' fees and costs attributable to each Plaintiff Class member shall be reported on an IRS Form 1099 issued to each Plaintiff Class member and the aggregate amount of attorneys' fees shall be reported on an IRS Form 1099 and issued to Outten & Golden LLP.

15

Class Counsel is solely responsible for the drafting of this Section VII.B, and the determination of the appropriate allocation of the Settlement Fund among Plaintiff Class members and the formula used to distribute the Settlement Fund to Plaintiff Class members.

C.    **Settlement Notice and Undeliverables**

Class Counsel shall bear the sole responsibility for the drafting, production, and mailing of all notices to be required for the Plaintiff Class members (the "Settlement Notices") and the Settlement Administrator shall be responsible for the mailing of the Initial Individual Payment and Final Individual Payment checks to Plaintiff Class members. Class Counsel's and Settlement Administrator's addresses will be used as the return address for the Settlement Notices and for checks mailed to the Plaintiff Class members, respectively, so that any returned Settlement Notices or checks will be returned to the sender who shall undertake to determine a current address and remail the Settlement Notice or check promptly. Any Settlement Notices or checks that are returned after three unsuccessful mailing attempts shall be deemed undeliverable. Any undeliverable distributions from the Initial Settlement Payment shall be added to the Final Settlement Payment and remitted to members of the Plaintiff Class at such time that the Final Settlement Payment is distributed to members. Any distribution checks that remain uncashed after 180 days from the Final Settlement Payment shall be paid to the Clerk of the Bankruptcy Court in the name of the Plaintiff Class member(s). Class Counsel shall cause the Settlement Notices to be mailed by first class mail to Plaintiff Class members as listed on Exhibit "C" hereto within ten (10) days after Preliminary Approval of this Settlement Agreement. The Settlement Notices shall be in substantially the form annexed hereto as Exhibit "A" or such substantially similar form as may be approved by the Delaware Court.

A Plaintiff Class member may object to this Settlement Agreement by sending timely written notice of such objection (a "Notice of Objection") to Class Counsel and the Trustee and by filing such Notice of Objection with the Delaware Court no later than seven (7) days prior to

the date fixed by the Delaware Court for the hearing to consider approval of this Settlement Agreement. Such objection shall clearly specify the relief sought and the grounds for such relief.

## VIII.   ADDITIONAL TERMS

### A.   <u>Non-Retaliation</u>

The Settling Parties recognize their existing mutual obligations not to retaliate against any person because that person did or did not participate in the Delaware Action or the Connecticut Action to any degree.

### B.   <u>Non-Interference</u>

The Settling Parties recognize their existing mutual obligations not to interfere in any manner with Plaintiff Class members' participation or non-participation in this settlement process.

### C.   <u>Terms of Settlement</u>

The terms of the settlement memorialized in this Settlement Agreement were reached as a result of arm's-length negotiations.

### D.   <u>Notices</u>

All notices, requests, demands, and other communications required or permitted to be given pursuant to this Settlement Agreement shall be in writing and shall be delivered personally or mailed, postage prepaid, by first-class mail, as applicable, to the members of the Plaintiff Class-at their last-known home-addresses in the Estates' or Debtors' personnel records or as updated through the claims process, or to the undersigned persons at their respective addresses as set forth herein:

Counsel for the Plaintiff Class:          René S. Roupinian
                                          Jack A. Raisner
                                          Outten & Golden LLP
                                          3 Park Avenue, 29th Floor
                                          New York, NY 10016

Counsel for Trustee:                          Mark E. Felger
                                              Kimya S.P. Johnson
                                              Cozen O'Connor
                                              1201 N. Market Street, Suite 1400
                                              Wilmington, DE 19801

### E.    Representation by Counsel

All of the Settling Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Settlement Agreement and further acknowledge that this Settlement Agreement has been executed with the consent and advice of counsel.

### F.    No Admission of Liability

The Settling Parties acknowledge and agree that liability for the actions that are the subject matter of this Settlement Agreement is disputed by the Settling Parties. This Settlement Agreement and the settlement are a compromise and shall not be construed as an admission of liability at any time, for any purpose, under any circumstances, by any of the Settling Parties to this Settlement Agreement. The Settling Parties further acknowledge and agree that this Settlement Agreement and the settlement shall not be used to suggest an admission of liability in any dispute the Settling Parties may have now or in the future with respect to any person or entity. Neither this Settlement Agreement nor anything herein, nor any part of the negotiations had in connection herewith, shall constitute evidence with respect to any issue or dispute.

### G.    Modification of Agreement

This Settlement Agreement may not be modified or amended except in writing, signed by the respective counsel of record for the Settling Parties, and as approved by the Delaware Court.

**H.    Further Cooperation**

The Settling Parties and their respective attorneys shall proceed diligently to prepare and execute all documents, to seek the necessary Delaware Court and Connecticut Court approvals, and to do all things reasonably necessary or convenient to consummate the Settlement Agreement and settlement.  The settlement will not become final until the conditions in Section I.B hereof are satisfied.

**I.    Construction and Interpretation**

This Settlement Agreement constitutes the entire agreement between the Settling Parties. Except as expressly provided herein, this Settlement Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms shall modify, vary, or contradict their terms.

This Settlement Agreement shall be interpreted and construed in accordance with the provisions of the Bankruptcy Code and, where not inconsistent, the laws of the State of Delaware, without regard to the conflict of laws of the State of Delaware.  This Settlement Agreement shall be construed as a whole according to the fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting any provisions of this Settlement Agreement, or any specific term or condition thereof.

The Plaintiff Class and the Named Plaintiffs and the Trustee participated in the negotiation and drafting of this Settlement Agreement and had available to them the advice and assistance of independent counsel.  As such, no member of the Plaintiff Class or the Named Plaintiffs or the Trustee may claim that any ambiguity in this Settlement Agreement should be construed against the other.

19

**J.**    **Counterparts**

This Settlement Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Settlement Agreement, may be executed in one or more counterparts, each of which shall be deemed an original of this Settlement Agreement.  All counterparts of any such document together shall constitute one and the same instrument.

**K.**    **Binding Effect**

This Settlement Agreement is binding upon and shall inure to the benefit of the Settling Parties to this Settlement Agreement, as well as their respective attorneys, and past, present and future divisions, predecessors, successors, shareholders, officers, directors, employees, agents, trustees, representatives, administrators, fiduciaries, assigns, subrogees, executors, partners, parents, subsidiaries, and privies.  Without limiting the foregoing, this Settlement Agreement specifically shall be binding upon the spouses, children, heirs, assigns, successors, and offspring of the Named Plaintiffs and all members of the Plaintiff Class.

**L.**    **Attorneys' Fees — Costs and Expenses**

Except as otherwise specifically provided herein, the Settling Parties shall bear responsibility for their own attorneys' fees, costs, and expenses, taxable or otherwise, incurred by them or arising out of the Delaware Action or Connecticut Action and shall not seek reimbursement thereof from any party to this Settlement Agreement.

**M.**    **Authority of Counsel**

Counsel for the Named Plaintiffs and Plaintiff Class's representative, identified below, warrant and represent that they are expressly authorized by the Class Representative and Named Plaintiffs to take all appropriate action required or permitted to be taken by the Named Plaintiffs and Plaintiff Class pursuant to this Settlement Agreement in order to effectuate its terms.  Further, counsel for the Plaintiff Class have full authority to execute this Settlement Agreement

or any modifications or amendments to this Settlement Agreement on behalf of all members of the Plaintiff Class.

Counsel for the Trustee warrant and represent that they are authorized to take all appropriate action required or permitted to be taken by the Trustee pursuant to this Settlement Agreement in order to effectuate its terms.

### N.   Continuing Jurisdiction

The Delaware Court shall have continuing jurisdiction to construe, interpret, and enforce the provisions of this Settlement Agreement; to supervise the administration and distribution of the resulting settlement funds; and to hear and adjudicate any dispute or litigation arising from this Settlement Agreement or the issues of law and fact asserted in the class action litigation.

### O.   Third-Party Beneficiaries

This Settlement Agreement does not constitute a contract for the benefit of any third parties, any prior creditors or claimants of the Settling Parties, or any nonparty, other than the Named Plaintiffs and Plaintiff Class in relation to the provisions of this Settlement Agreement, except that the releases, covenants not to sue (and related provisions), and covenants to cooperate in Section VIII.H contained herein shall inure to the benefit of the Connecticut Releasees. This Settlement Agreement shall not inure to the benefit of any third party purchasers who purport to obtain the Named Plaintiffs' or Plaintiff Class members' claims through assignment, transfer or otherwise. Class Counsel, the Settlement Administrator, and the Trustee for the Estates of the Debtors shall be under no obligation to distribute payments from the Settlement Fund or otherwise except to the Named Plaintiffs and Plaintiff Class members themselves, or their representatives, heirs, executors, administrators, personal representatives, legal representatives, agents, and attorneys.

*[signature page to follow]*

21

IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement as of the date indicated below:


DATED:_____    By_____
                                      Jeffrey Austen
                                      As himself and Plaintiff Class
                                      Representative


DATED:_____    By_____
                                      David A. Icardi


DATED: 2|3|12_____    On Behalf of the Named Plaintiffs and Plaintiff
                                   Class
                                   By_____
                                      René S. Roupinian
                                      Jack A. Raisner
                                      Outten & Golden LLP
                                      Attorneys for the Plaintiff Class and the
                                      Named Plaintiffs



DATED: _____    Chapter 7 Trustee for Archway Cookies LLC, *et al.*
                                   By_____
                                      Jeoffrey L. Burtch
                                      Chapter 7 Trustee for Archway Cookies,
                                      LLC and Mother's Cake & Cookie Co.


22

# EXHIBIT "2"

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (this "Settlement Agreement") is entered into as of _____ ____, 2012, by, between and among Jeoffrey L. Burtch, as Chapter 7 trustee for the bankruptcy estates of Archway Cookies, LLC, *et al.* (the "Trustee" for the "Estates" of the "Debtors"), and Catterton Partners V, L.P., Catterton Partners V Offshore, L.P., Catterton Coinvest I, L.L.C. (collectively "Catterton"), and Insight Holdings, LLC ("Insight," together with the Trustee and Catterton, the "Parties") with reference to the following facts and recitals:

WHEREAS, on October 15, 2008, a complaint (the "Delaware Complaint") was filed by Jeffrey Austen (the "Delaware Named Plaintiff"), on behalf of himself and a putative class, against the Debtors and other defendants in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court"), styled *Austen v. Archway Cookies, LLC*, No. 08-12323(CSS), Adv. Pro. No. 08-51530-CSS (the "Delaware Action"), alleging that the defendants violated the WARN Act, 29 U.S.C. § 2104, and the California Reductions, Mass Terminations and Layoffs law, Cal. Labor Code § 1400 *et seq.* ("Cal-WARN Act"); and

WHEREAS, on August 6, 2009, a complaint (the "Connecticut Complaint," together with the Delaware Complaint, the "Complaints") was filed by Jeffrey Austen and David A. Icardi (together, the "Connecticut Named Plaintiffs"), on behalf of themselves and a putative class, against Catterton and Insight in the United States District Court for the District of Connecticut (the "Connecticut Court"), styled *Austen v. Catterton Partners V, LP*, No. 3:09-cv-01257-MRK (the "Connecticut Action"), alleging that the defendants violated the WARN Act, 29 U.S.C.

§ 2104, and the California Reductions, Mass Terminations and Layoffs law, Cal. Labor Code § 1400 *et seq.* ("Cal-WARN Act"); and

WHEREAS, on May 10, 2010, the Delaware Court certified a class (the "Delaware Class") in the Delaware Action consisting of the "the Plaintiff and the other former employees of Debtors (i) who worked at or reported to certain of Debtors' Facilities and were terminated without cause on or about October 3, 2008, within 30 days of October 3, 2008, or in anticipation of, or as the foreseeable consequence of, the mass layoff or plant closings on or about October 3, 2008, who were not given sixty days advance written notice of their terminations, who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5), and (ii) who have not filed a timely request to opt-out of the class," and appointed the Delaware Named Plaintiff as class representative (the "Delaware Class Representative"); and

WHEREAS, the Trustee, the Delaware Class Representative, and the Connecticut Named Plaintiffs will, concurrently with the execution of this Settlement Agreement, enter into a settlement agreement (the "Delaware Settlement Agreement") to finally resolve the Delaware Action and the Connecticut Action; and

WHEREAS, under the terms of the Delaware Settlement Agreement, the Delaware Class Representative agreed to, among other things, the release and dismissal with prejudice of all claims by the Delaware Named Plaintiff and Delaware Class that were or could have been asserted in or that arise out of the Delaware Action; and

WHEREAS, under the terms of the Delaware Settlement Agreement, the Connecticut Named Plaintiffs agreed to, among other things, the release and dismissal with prejudice of all

2

claims by the Connecticut Named Plaintiffs that were or could have been asserted in or that arise out of the Connecticut Action; and

WHEREAS, under the terms of the Delaware Settlement Agreement, to completely resolve the Delaware Action and the Connecticut Action, the Trustee agreed to the creation of a settlement fund (the "Delaware Settlement Fund") in an amount not to exceed four million dollars ($4,000,000), to be funded by the Estates in an amount of three million dollars ($3,000,000) (the "Delaware Initial Settlement Payment") within ten (10) business days after the "Settlement Effective Date" as defined by the Delaware Settlement Agreement (the "Delaware Settlement Effective Date"), and thereafter one million dollars ($1,000,0000) shall be allowed as an unsecured, priority claim by the Estates (the "Delaware Final Settlement Payment"), which claim shall be paid no later than thirty (30) days after the entry of an order by the Delaware Court in Debtors' jointly administered Chapter 7 bankruptcy cases, entitled *In re Archway Cookies, LLC*, No. 08-12323-CSS approving the Trustee's final report; and

WHEREAS, on October 1, 2010, a complaint was filed by the Trustee on behalf of the Estates against Latham & Watkins LLP in the Delaware Court, styled *Burtch v. Latham & Watkins LLP*, No. 08-12323(CSS), Adv. Pro. No. 10-53162(CSS) (the "Preference Action"), to avoid and recover an allegedly preferential transfer from the Debtors to the defendant.

NOW, THEREFORE, in consideration of the foregoing and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and described herein, and intending to be legally bound, the Parties agree as follows:

1.     The recitals set forth above are incorporated herein by reference.

2.     No later than five (5) business days after the Delaware Settlement Effective Date,

Catterton shall pay Two Million Five Hundred Thousand Dollars ($2,500,000) in cash (U.S.) (the "Settlement Payment") to the Trustee by wire transfer to an account to be designated by the Trustee prior to the Effective Date (as defined in paragraph 24 herein), such payment being made as the full, complete, and sole contribution by the Catterton Releasees (as defined in paragraph 6 herein) and the Insight Releasees (as defined in paragraph 6 herein) to the settlements effected by this Settlement Agreement and the Delaware Settlement Agreement, and as the full, complete, and sole consideration for the releases (as detailed in Section VII.A of the Delaware Settlement Agreement) by the Plaintiff Class and Named Plaintiffs (as defined in the Delaware Settlement Agreement), and the releases (as defined in paragraph 6 herein) by the Estate Releasors (as defined in paragraph 6 herein).

3.    In the event that the Trustee gains the right to terminate the Delaware Settlement Agreement because of a condition specified in Section III or Section V of the Delaware Settlement Agreement, then the Trustee shall consult with Catterton as to whether the Trustee will terminate the Delaware Settlement Agreement. If Catterton does not agree with the Trustee's decision as to whether to terminate the Delaware Settlement Agreement under Section V of the Delaware Settlement Agreement, then Catterton may rescind this Settlement Agreement at any time prior to the objection deadline for the motion to approve this Settlement Agreement.

4.    In the event that any of the conditions specified in Section I.B of the Delaware Settlement Agreement are not satisfied, or in the event the Delaware Settlement Agreement does not obtain approval of the Delaware Court for any reason, all matters covered by this Settlement Agreement and the releases contained herein shall be null and void. In such event, nothing in this Settlement Agreement shall be used or construed by or against any

party as a determination, admission, or concession of any issue of law or fact in any litigation; and the Parties do not waive, and instead expressly reserve, their respective rights to prosecute and defend the litigation as if this Settlement Agreement never existed.

5.    Nothing in this Settlement Agreement shall be construed to affect or otherwise modify the terms of the existing agreement and releases between the Parties and other entities and individuals entered into as of January 22, 2010 (the "Master Settlement Agreement"), approved by the Delaware Court by order entered on February 23, 2010, *see* Order Granting Trustee's Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 for Entry of Order Approving Settlement, *In re Archway Cookies, LLC*, No. 08-12323-CSS (Bankr. Del. Feb. 23, 2010) (ECF No. 830).

6.    In consideration of the foregoing and the mutual covenants, agreements, representations and warranties set forth herein, immediately upon the receipt by the Trustee of the Settlement Payment in good funds, the Trustee, on behalf of himself (but solely in his capacity as Trustee of the Estates), the Debtors, the Estates and his and their successors and assigns (collectively, the "Estate Releasors"), hereby release, acquit, and discharge the Catterton Releasees (as defined herein) and the Insight Releasees (as defined herein) from any and all debts, claims (including, without limitation, crossclaims, counterclaims, rights of set-off and recoupment, rights to contribution, rights to indemnification), suits, demands, liabilities, damages and consequential damages, actions or causes of action of whatsoever nature and kind, whether known or unknown, suspected or unsuspected, asserted or unasserted, arising at law or in equity, fixed or contingent, liquidated or unliquidated, arising from acts, omissions or events that have occurred from the beginning of the world through the Effective Date (as defined in paragraph 24 herein), regarding claims and causes set forth

in the Complaints, and any other claims or causes arising out of the facts, circumstances, transactions, or events set forth in the Complaints, and the subject matter of this Settlement Agreement (the "Released Claims"); provided, however, that the Estate Releasors do not release any claims arising under this Settlement Agreement. The Estate Releasors expressly covenant not to sue or otherwise participate in any action against the Catterton Releasees (as defined herein) or Insight Releasees (as defined herein) based on the claims and causes set forth in the Complaints and brought by any member of the Delaware Class (including any persons who have opted out or will opt out of the Delaware Class), and any other claims or causes arising out of the facts, circumstances, transactions, or events set forth in the Complaints and brought by any member of the Delaware Class (including any persons who have opted out or will opt out of the Delaware Class). As used herein, the term "Catterton Releasees" shall mean Catterton, Catterton Managing Partner V, L.L.C., and Catterton Management Company, L.L.C., in any capacity, and their attorneys and past, present and future divisions, affiliates, predecessors, successors, shareholders, members, officers, directors, employees, agents, trustees, representatives, administrators, fiduciaries, assigns, subrogees, executors, partners, limited partners, parents, subsidiaries, and privies. As used herein, the term "Insight Releasees" shall mean Insight in any capacity and its attorneys and past, present and future divisions, affiliates, predecessors, successors, shareholders, members, officers, directors, employees, agents, trustees, representatives, administrators, fiduciaries, assigns, subrogees, executors, partners, limited partners, parents, subsidiaries, and privies.

7.      In consideration of the foregoing and the mutual covenants, agreements, representations and warranties set forth herein, immediately upon the later of the receipt by the Trustee of the Settlement Payment in good funds, Catterton, on behalf of itself and its

6

successors and assigns (collectively, the "Catterton Releasors") and Insight, on behalf of itself and its successors and assigns (collectively, the "Insight Releasors"), hereby release, acquit, and discharge the Estate Releasees (as defined herein) from any and all debts, claims (including, without limitation, crossclaims, counterclaims, rights of set-off and recoupment, rights to contribution, rights to indemnification), suits, demands, liabilities, damages and consequential damages, actions or causes of action of whatsoever nature and kind, whether known or unknown, suspected or unsuspected, asserted or unasserted, arising at law or in equity, fixed or contingent, liquidated or unliquidated, arising from acts, omissions or events that have occurred from the beginning of the world through the Effective Date (as defined in paragraph 24 herein), regarding claims and causes set forth in the Complaints, and any other claims or causes arising out of the facts, circumstances, transactions, or events set forth in the Complaints, and the subject matter of this Settlement Agreement; provided, however, that the Catterton Releasors and the Insight Releasors do not release any claims arising under this Settlement Agreement.    The Catterton Releasors and the Insight Releasors expressly covenant not to sue or otherwise participate in any action against the Estate Releasees (as defined herein) based on the claims and causes set forth in the Complaints and brought by any member of the Delaware Class (including any persons who have opted out or will opt out of the Delaware Class), and any other claims or causes arising out of the facts, circumstances, transactions, or events set forth in the Complaints and brought by any member of the Delaware Class (including any persons who have opted out or will opt out of the Delaware Class).    As used herein, the term "Estate Releasees" shall mean collectively the Trustee, the Debtors and the Estates in any capacity and their attorneys and past, present and future divisions, affiliates, predecessors, successors, shareholders, members, officers, directors,

employees, agents, trustees, representatives, administrators, fiduciaries, assigns, subrogees, executors, partners, limited partners, parents, subsidiaries, and privies.

8.    In consideration of the foregoing and the mutual covenants, agreements, representations and warranties set forth herein, immediately upon the Effective Date (as defined in paragraph 24 herein), the Catterton Releasors hereby release, acquit, and discharge the Insight Releasees from any and all debts, claims (including, without limitation, crossclaims, counterclaims, rights of set-off and recoupment, rights to contribution, rights to indemnification), suits, demands, liabilities, damages and consequential damages, actions or causes of action of whatsoever nature and kind, whether known or unknown, suspected or unsuspected, asserted or unasserted, arising at law or in equity, fixed or contingent, liquidated or unliquidated, arising from acts, omissions or events that have occurred from the beginning of the world through the Effective Date (as defined in paragraph 24 herein) relating to the subject matter of the Complaints; provided, however, that the Catterton Releasors do not release any claims arising under this Settlement Agreement. The Catterton Releasors expressly covenant not to sue or otherwise participate in any action against the Insight Releasees based on the claims and causes set forth in the Complaints and brought by any member of the Delaware Class (including any persons who have opted out or will opt out of the Delaware Class), and any other claims or causes arising out of the facts, circumstances, transactions, or events set forth in the Complaints and brought by any member of the Delaware Class (including any persons who have opted out or will opt out of the Delaware Class).

9.    In consideration of the foregoing and the mutual covenants, agreements, representations and warranties set forth herein, immediately upon the Effective Date (as

8

defined in paragraph 24 herein), the Insight Releasors hereby release, acquit, and discharge the Catterton Releasees from any and all debts, claims (including, without limitation, crossclaims, counterclaims, rights of set-off and recoupment, rights to contribution, rights to indemnification), suits, demands, liabilities, damages and consequential damages, actions or causes of action of whatsoever nature and kind, whether known or unknown, suspected or unsuspected, asserted or unasserted, arising at law or in equity, fixed or contingent, liquidated or unliquidated, arising from acts, omissions or events that have occurred from the beginning of the world through the Effective Date (as defined in paragraph 24 herein) relating to the subject matter of the Complaints; provided, however, that the Insight Releasors do not release any claims arising under this Settlement Agreement. The Insight Releasors expressly covenant not to sue or otherwise participate in any action against the Catterton Releasees based on the claims and causes set forth in the Complaints and brought by any member of the Delaware Class (including any persons who have opted out or will opt out of the Delaware Class), and any other claims or causes arising out of the facts, circumstances, transactions, or events set forth in the Complaints and brought by any member of the Delaware Class (including any persons who have opted out or will opt out of the Delaware Class).

10. The Parties understand and agree that the payment of any sum of money and the execution of this Settlement Agreement shall not constitute or be construed as an admission of liability whatsoever by any Party, and Catterton and Insight have consistently taken the position that they have no liability whatsoever to the Trustee, Debtors, the Estates, Delaware Named Plaintiff, Delaware Class Representative, Delaware Class, and Connecticut Named Plaintiffs.

9

11.     The Parties each represent and warrant that they own and have not assigned or otherwise transferred to any other person or entity all of such Party's rights and claims as are implicated by this Settlement Agreement.

12.     The Parties represent and acknowledge that, in executing this Settlement Agreement, they do not rely and have not relied upon any representation or statement made by any Party or any of their agents, representatives, or attorneys, with regard to the subject matter, basis or effect of this Settlement Agreement or otherwise, other than as specifically stated in this Settlement Agreement.

13.     The Parties fully understand that they are compromising and releasing, among other matters, claims related to disputed claims for the payment of wages, and they expressly assume the risk that facts relating to this release and dismissal may later be found to be other than or different from the facts now believed to be true, and they expressly accept and acknowledge that in such an event this Settlement Agreement and the releases of claims found herein prior to the Effective Date (as defined in paragraph 24 herein) will remain valid. The Parties agree that the releases contained herein extend to claims which they do not know or suspect to exist in their favor at the time of executing this Settlement Agreement, which if known to them, would have materially affected their decision to enter this Settlement Agreement.

14.     The Parties further declare that, in making this Settlement Agreement, they rely entirely upon their own judgment, beliefs and interest, and the advice of their own counsel (for whose expense each shall be solely responsible), and that they have had a reasonable period of time to consider this Settlement Agreement and consult with counsel.

15.    The Parties agree that each Party and his/its counsel have reviewed this Settlement Agreement, and that each fully understands and voluntarily accepts all of the provisions contained in this Settlement Agreement. The Parties further agree that this Settlement Agreement was the product of good faith negotiations between the Parties and that any rule of construction that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Settlement Agreement.

16.    This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto, and the Parties' respective predecessors, successors and assigns, including, without limitation, any subsequently appointed Chapter 7 trustee, liquidating trustee, or receiver.

17.    The language of all parts of this Settlement Agreement shall, in all instances, be construed as a whole, according to its fair meaning, and not strictly for or against any Party.

18.    Should any provision of this Settlement Agreement be declared or be determined by any court of competent jurisdiction to be illegal, invalid, or unenforceable, then the legality, validity, and enforceability of the remaining parts, terms, or provisions shall not be affected thereby and said illegal, unenforceable, or invalid part, term or provision shall be deemed not to be a part of this Settlement Agreement.

19.    This Settlement Agreement sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements and understandings, written or oral, between and among the Parties pertaining to the subject matter hereof.

20. No modification of this Settlement Agreement shall be binding or enforceable unless in writing and signed by the Parties and approved by the Delaware Court.

21. This Settlement Agreement shall be interpreted and construed in accordance with the provisions of the Bankruptcy Code and, where not inconsistent, the laws of the State of Delaware, without regard to the conflict of laws of the State of Delaware. Each of the Parties hereby irrevocably consents to the jurisdiction of the Delaware Court with respect to any action to enforce the terms and provisions of this Settlement Agreement, and expressly waives any right to commence any such action in any other forum.

22. This Settlement Agreement may be executed in one or more counterparts, including by email and/or facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

23. Each person signing this Settlement Agreement represents and warrants that he/she has been duly authorized and has the requisite authority to execute and deliver this Settlement Agreement on behalf of such Party and to bind his/her respective client(s) to the terms and conditions of this Settlement Agreement.

24. This Settlement Agreement shall become effective (the "Effective Date") on the date that the Order entered by the Delaware Court approving this Settlement Agreement and the Delaware Settlement Agreement becomes a final non-appealable Order. After full execution, the Trustee will proceed to file any necessary papers with the Delaware Court to obtain court approval of this Settlement Agreement. Each of the Parties shall cooperate with the Trustee's efforts to obtain Delaware Court approval in all respects and shall take no action inconsistent therewith. In the event that the Delaware Court does not approve this

Settlement Agreement or the Delaware Settlement Agreement, then this Settlement Agreement shall be deemed to be null and void and no party shall have any obligation to any other Party arising out of this Settlement Agreement and no statement made herein may be used by or against any Party or any non-Party for any purpose.

25.   Each Party shall do and perform, or cause to be done and performed, all such further acts and things, and shall execute and deliver all such other agreements, certificates, instruments and documents that the other Party may reasonably request to carry out the intent and accomplish the purposes of this Settlement Agreement.

26.   The Trustee agrees to use his best efforts to minimize any reference to Catterton and/or Insight in any publicity or communications (including communications to the Delaware Class) associated with the Delaware Settlement Agreement.

27.   Within ten (10) business days after receipt of the Settlement Payment in good funds, the Trustee shall file a notice of dismissal with prejudice of the Preference Action.

*[signature pages to follow]*

IN WITNESS WHEREOF, the Parties have each approved and executed this Settlement Agreement.

CATTERTON PARTNERS V, L.P.

By:  Catterton Managing Partner V, L.L.C.
Its:  General Partner

    By:  CP5 Principals, L.L.C.
    Its:  Managing Member

By: _____
Title: _____

Dated: _____

CATTERTON PARTNERS V OFFSHORE, L.P.

By:  Catterton Managing Partner V, L.L.C.
Its:  General Partner

    By:  CP5 Principals, L.L.C.
    Its:  Managing Member

By: _____
Title: _____

Dated: _____

CATTERTON COINVEST I, L.L.C.

By:  Catterton Management Company, L.L.C.
Its:  Manager

By: _____
Title: _____

Dated: _____

INSIGHT HOLDINGS, LLC


By: _____
Title:

Dated: _____



_____
Jeoffrey L. Burtch
Chapter 7 Trustee for Archway Cookies, LLC, *et al.*
P.O. Box 549
Wilmington, DE 19899


Dated: _____

15